## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER DUMINIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | NO.:   17 C 003030 |
| | ) | |
| NORTHEAST ILLINOIS REGIONAL | ) | JUDGE ROBERT DOW |
| COMMUTER RAILROAD | ) | |
| CORPORATION D/B/A METRA, | ) | |
| | ) | Magistrate Judge Jeffrey T. Gilbert |
| Defendant. | ) | |

## METRA'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

Defendant, Northeast Illinois Regional Commuter Railroad Corporation, d/b/a Metra, ("Metra"), by and through its attorneys, Jamie V. Harrmann, pursuant to FED. R. CIV. P. 12(b)(6) and (f), moves to dismiss the Third Amended Complaint, stating:

### INTRODUCTION

Plaintiff's Third Amended Complaint fails to correct the deficiencies of her previous three pleadings, and should be dismissed. Plaintiff continues to "mix and match actions and motivations . . . until she finds a pairing that she believes provides an actionable claim."[1] However, none of the modified counts in her Third Amended Complaint successfully state a claim, and Plaintiff pleads new facts which undermine those claims which previously withstood dismissal.

Plaintiff alleges that, after being granted and utilizing FMLA leave, she was subject to the following discriminatory acts, which ultimately "forced her to resign from her job against her will":

- Having to provide additional information and supporting documentation of her doctor's appointments, while taking intermittent FMLA leave (Third Am. Compl., ¶ 18);
- Receiving criticism (Third Am. Compl., ¶ 21);

---

[1] This Court previously dismissed Plaintiff's claims that she was terminated on the basis of race, that she was subject to a hostile work environment, that Metra violated the ADA, and that Metra interfered with her FMLA rights. *See* Memorandum Opinion and Order dated February 4, 2019 (the "Order"), attached hereto as **Exhibit A.**

- Being prevented from bidding for other positions until she completed training another employee for her current position (Third Am. Compl., ¶ 23);
- Following her FMLA leave, being promoted to the Chief Clerk position, subsequently demoted to a janitorial position; and thereafter being transferred to an office position. (Third Am. Compl., ¶¶ 35-38);
- Experiencing "rude and intimidating" behavior by Rudy Guajardo (Third Am. Compl., ¶ 21);
- Not receiving information about personnel matters concerning other employees (Third Am. Compl., ¶ 42);
- Being yelled at in a "rude and abrasive manner" by Mario Reeves (Third Am. Compl., ¶ 48);
- Observing a co-worker sitting at her desk, reading her e-mails (Third Am. Compl., ¶ 46);
- Hearing through the grapevine that her supervisors were "told to work her extra hard," and said she "was trouble" (Third Am. Compl., ¶¶ 49-50);
- Not having a water leak near her desk fixed (Third Am. Compl., ¶ 51).

*See* Third Amended Complaint, attached hereto as **Exhibit B**. Plaintiff alleges a hostile work environment based on race discrimination in violation of Title VII and 42 U.S.C. § 1981 (Counts I-II), FMLA retaliation (Count III), and Constructive Discharge based on race, and in retaliation for exercising FMLA rights (Counts IV-V). All counts should be dismissed.

## ARGUMENT

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim to relief that is plausible on its face." *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the sufficiency of a complaint under the plausibility standard, the court accepts the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("An inadequate complaint will not survive a motion to dismiss simply because the defendants managed to figure out the basic factual or legal grounds for the claims."). The plaintiff must provide enough details about his claim to present a story that holds together and is not based on conclusions or speculation. *Carlson v. CSX Transportation*, 758 F.3d 819 (7th Cir. 2014). The complaint still needs to set forth enough factual specificity to causally connect Plaintiff's claim to his alleged injury. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). Where a complaint pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014).

**I.     Counts I-II fail to plead a claim of race discrimination because Plaintiff does not allege she was subject to an adverse job action.**

To state a claim for race discrimination under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981[2] the plaintiff must plead facts that the employer instituted an adverse employment action on the basis of race. *Carlson v. CSX Transportation*, 758 F.3d 819, 827 (7th Cir. 2014), *citing Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511-512 (2002). "A materially adverse employment action is one which visits upon a plaintiff a significant change in employment status." *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016). An adverse job action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities," and "not everything that makes an employee unhappy is an actionably adverse action." *Porter v. City of Chi.*, 700 F.3d 944, 954 (7th Cir. 2016).

Because Plaintiff does not provide allegations showing her supervisors acted with explicit racial animus, she must allege circumstances from which the Court may infer racial animus, such as suspicious timing, ambiguous statements or comments directed at other employees in the protected class, evidence that similarly-situated employees outside the protected class received systematically better treatment, or evidence of pretext. Order, pg. 8 (Exhibit A) (citing to *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir. 2014).

Plaintiff alleges that her supervisors "repeatedly requested" that she provide documentation to support her FMLA leave, that her work was subjected to "excessive criticism," that she experienced "rude and intimidating behavior," that she heard rumors that her supervisors were told to work her "extra hard"

---

[2] *Lalvani v. Cook Cty., Illinois*, 269 F.3d 785, 789 (7th Cir. 2001) ("A *prima facie* case of race or ethnicity discrimination under § 1981 is predicated on the same elements as an ethnicity discrimination claim under Title VII, and we thus analyze these two aspects of his case together.").

and that she "was trouble," and that a water leak near her desk was not fixed. Third Amended Complaint, ¶¶ 18, 21, 23, 42, 46, 48-51, Exhibit B.

Plaintiff also alleges that she was transferred from her Ticket by Internet Position to the Chief Clerk position (a promotion) (a fact omitted from her Second Amended Complaint) and that a similarly-situated white employee filled her Ticket by Internet slot when she was promoted. Third Amended Complaint, ¶¶ 28, 34, 35. She alleges that she was "inadequately trained" in the position of Chief Clerk, and subsequently demoted to a janitorial position. Third Amended Complaint, ¶ 36.

This Court already concluded that Metra's requirement that Plaintiff provide documentation to support each medical appointment is not an adverse employment action. Order, pg. 8 (Exhibit A) ("the fact that Plaintiff's supervisors required her to provide proof of her doctor's visits each time she left for a FMLA appointment does not rise to the level of an adverse employment action."). Her other allegations regarding rude behavior, being yelled at, hearing rumors that her supervisors described her as "trouble" and were told to work her "extra hard," and not having a water leak near her desk fixed, are quintessentially the type of "trivial harms, petty slights, [and] minor annoyances" that do not rise to the level of an adverse employment action. *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009).

This Court has also held that "to survive Defendant's motion to dismiss, Plaintiff must plead facts that allow the Court to reasonably infer a discriminatory reason for her reassignment…" Order, pg. 8 (Exhibit A). While the allegations in Plaintiff's Second Amended Complaint regarding her demotion to a janitor position (while being replaced by a similarly-situated white employee) survived Metra's prior motion to dismiss, Plaintiff now alleges she first received a *promotion* from the Ticket By Internet Clerk position to Chief Clerk, and was only later demoted to a janitorial position (which she attributes to inadequate training). Third Amended Complaint, ¶¶ 34-36 ("After filing the EEOC Complaint and lawsuit

. . . Plaintiff was moved to the Chief Clerk position, [was] inadequately trained, and then disqualified. Plaintiff was subsequently demoted to cleaning toilets as a janitor…").

Plaintiff does not allege any facts that make it plausible that her assignment was racially motivated. She does not allege that this reassignment (from Chief Clerk) to janitor was connected to the previously identified, similarly-situated, white employee (who took over her position when she was *promoted*, and not when she was later demoted). As such, Plaintiff is unable to show that a similarly-situated employee outside of the protected class received systematically better treatment. Therefore, the race discrimination claims of Counts I and II must be dismissed.

**II.** **Counts I-II should also be dismissed because Plaintiff fails to allege severe and pervasive offensive conduct to support her claims of hostile work environment.**

Counts I and II of Plaintiff's Third Amended Complaint allege a hostile work environment based on race. To state a claim for a hostile work environment, Plaintiff must allege: (1) she was subject to unwelcome harassment; (2) the harassment was based on race; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833-34 (7th Cir. 2015). "Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment." *Porter v. City of Chicago*, 700 F.3d 944, 956 (7th Cir. 2012), citing *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009).

As was the case with her Second Amended Complaint, none of the allegations in the Third Amended Complaint suggest that Plaintiff was subjected to harassment based on race. The series of incidents alleged by Plaintiff (i.e. "rude and abrasive" behavior; "excessive criticism," hearing rumors that her supervisors described her as "trouble" and were instructed to make her work "extra hard," and the requirement that she submit proof of doctor's appointments) fall short of describing the type of severe and pervasive abusive conduct required to support her hostile work environment claims. She has not alleged

an environment "permeated with discriminatory intimidation, ridicule, and insult," or that she was subject to a "physically threatening or openly racist" work environment. *Monroe v. Columbia Coll. of Chicago*, No. 17-CV-5837, 2018 WL 4074190, at \*4 (N.D. Ill. Aug. 27, 2018) (plaintiff did not plausibly allege a hostile work environment where he claimed he was denied professional opportunities, was subjected to hyper-surveillance, and was falsely denigrated); *also* Order, pg. 14-15 (Exhibit A). Plaintiff does not plausibly allege a hostile work environment, and Counts I-II should be dismissed.

### III.   Count II should be dismissed because Plaintiff does not allege a policy or custom of discrimination, as required to state a prima facie case of § 1981 discrimination.

Plaintiff's § 1981 claim fails.  To properly assert this claim, Plaintiff must plead that: (1) she is a member of a racial minority, (2) Defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract." *De v. City of Chicago*, 92 F.Supp.2d 709, 723-30 (N.D. Ill. 2012).  To establish that the alleged discrimination falls within the scope of activities proscribed by the statute, Plaintiff must also demonstrate that she suffered "a materially adverse employment action." *Lewis v. City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007).

Under § 1981, a public corporation, like Metra, cannot be held liable based on a theory of *respondeat superior* but, rather, can only be held liable when the constitutional deprivation is caused by the municipality's own conduct. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978). To establish municipal liability, a plaintiff must establish that the alleged injuries were caused by an express municipal policy, a person with final policymaking authority, or a common municipal practice so widespread and well-settled that it constitutes a custom or usage with the force of law. *Lawrence v. Kenosha County*, 391 F.3d 837, 843- 844 (7th. Cir. 2002).

While Plaintiff alleges "[t]he Defendant committed discriminatory employment practices and race discrimination against Plaintiff . . . on the basis of race and she was denied the equal enjoyment of all benefits, privileges, terms, and conditions of employment as her white counterparts, which constitute

illegal intentional race discrimination in violation of 42 U.S.C. § 1981," this is precisely the type of formulaic recitation of elements that is insufficient as a matter of law. Third Amended Complaint, ¶ 71. Plaintiff's allegations do not plausibly describe the existence of a policy or practice giving rise to the alleged discrimination. As was the case with her previously dismissed § 1981 claim contained in the First Amended Complaint, Count III of Plaintiff's Third Amended Complaint fails to contain allegations subjecting Metra to liability, and should be dismissed.

### IV. Count III should be dismissed because the threat of removal is not enough to support an FMLA retaliation claim.

To succeed on a FMLA retaliation claim, Plaintiff must establish that: "(1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two." *Carter v. Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015). Generally, an adverse employment action "falls into one of three categories (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.,* 662 F.3d 448, 453-54 (7th Cir. 2011).

Plaintiff's Third Amended Complaint alleges she was: (i) threatened to be removed from her position in December 2015, (ii) not allowed to bid for a new position until she trained the employee who bumped her, and (iii) was medically disqualified from her position in February, 2016 and was then given a promotion to the position of Chief Clerk before being demoted to janitor. Third Amended Complaint, ¶¶ 23, 24, 27, 35 & 36.

First, Plaintiff's allegation that she was promoted to the position of Chief Clerk *after* exercising her FMLA rights undercuts the plausibility of her contention that she was retaliated against for exercising those rights. Third Amended Complaint, ¶ 33-35. Second, while Plaintiff pleads that she was threatened

with removal from her position if she did not have her FMLA removed, this Court has already ruled that "unfilled threats are not materially adverse actions" and the threat to be removed from her position is not enough to plead a claim of FMLA retaliation. Order, pp. 20-21 (Exhibit A). Further, her allegation about being prevented from bidding for new positions makes clear that this was due to the requirement that she first train her replacement – and not due to any retaliatory motive. Third Amended Complaint, ¶ 23. Plaintiff does not allege that similarly-situated employees outside her protected class were excused from this expectation. Because Plaintiff does not plausibly allege an adverse job action, and one that is causally connected to retaliation for her exercise of FMLA rights, Count III should be dismissed.

**V.    Counts IV and V should be dismissed because Plaintiff fails to plead a prima facie case for constructive discharge, as she does allege facts describing an "abusive" working environment.**

To prevail on a claim for constructive discharge, Plaintiff must show that "a hostile work environment existed and that the abusive working environment became so intolerable that [her] resignation qualified as a fitting response." *Herr v. City of Chicago*, 479 F. Supp. 2d 834, 840–41 (N.D. Ill. 2007). In addition, she "must show that the harassment resulting in [her] constructive discharge was motivated by" her race (Count IV) or her exercise of FMLA rights (Count V).[3] As explained in Section II, *supra*, Plaintiff's Third Amended Complaint does not contain allegations which plausibly describe a hostile work environment.

The type of abusive work environment that normally supports a claim for constructive discharge does not exist here. Courts have found constructive discharge where, for example, "the plaintiff's boss consistently made racial comments and on one occasion held a gun to his head, took a photo, and later showed it at a staff meeting while making racial jokes," and where an HR manager "threatened to kill the

---

[3] Illinois courts do not recognize constructive discharge in claims of retaliatory discharge. *Cooksey v. Bd. of Educ. of the City of Chicago*, No. 13 C 8619, 2014 WL 702386, at *2 (N.D. Ill. Feb. 24, 2014) ("[A]s things stand now, retaliatory constructive discharge claims are not recognized in Illinois, and the Illinois Supreme Court's language strongly discourages us from turning [this] claim into a novel cause of action under Illinois law.") (internal citations and quotations omitted).

plaintiff and repeatedly showed her racist pornographic photos." *Id.* (citing to *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1190 (7th Cir. 1992) and *Brooms v. Regal Tube Co.,* 881 F.2d 412, 417 (7th Cir.1989)).

Here, Plaintiff makes no allegations rising to this level. She alleges she had to provide supporting documentation for her doctor's appointments, received criticism, was prevented from bidding for another position before she completed training another employee, was replaced by a white employee when she was *promoted* to the position of Chief Clerk, experienced rude and intimidating behavior, was yelled at, observed a co-worker sitting at her desk, reading her e-mails, and experienced a water leak near her desk which was not fixed. Third Amended Complaint, ¶¶ 18, 21, 23, 35-38, 42, 46, 48-51. These allegations are insufficient to support a constructive discharge claim and Counts IV and V should be dismissed.

## VI.  Counts I, II, and IV should be dismissed because they exceed the scope of Plaintiff's EEOC Charge.

A plaintiff cannot bring claims that were not originally included in the charges made to the EEOC. *Butler v. Illinois Dept. of Transp.*, 533 F.Supp.2d 821(824) (N.D. Ill. 2008), *citing Sitar v. Indiana Dep't of Transp.,* 344 F.3d 720, 726 (7th Cir. 2003). Claims in subsequent judicial proceedings must be "reasonably related to the allegations of the EEOC charge and growing out of such allegations." *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256-57 (7th Cir. 2011); Order, pg. 11 (Exhibit A). The Seventh Circuit "has repeatedly held that charges of discrimination and harassment are not normally sufficiently 'like or reasonably related' to 'permit an EEOC charge of one type of wrong to support a subsequent civil suit for another.'" Order, pg. 12 (Exhibit A) (citing to *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003). The Seventh Circuit recognizes an exception only when the claims are "so related and intertwined in time, people, and substance that to ignore that relationship for a strict and technical application of the rule would subvert" the purpose of Title VII. *Id.*

Plaintiff's EEOC charge alleges she was subjected to harassment on the basis of disability and in retaliation for opposing unlawful sexual discrimination. Plaintiff also asserted a racial discrimination claim related to Defendant's alleged refusal to allow her to exercise contractual "bumping rights" while another similarly situated white employee was allowed to do so.

Plaintiff's Third Amended Complaint, on the other hand, alleges a hostile work environment claim on the basis of race, and constructive discharge on the basis of race. Plaintiff alleges a variety of events (unrelated to her contractual "bumping rights") as the basis for these claims, which were not raised in the underlying charge. Third Amended Complaint, ¶ 58 (Count I) ("Defendant discriminated against Plaintiff by subjecting her to a racially hostile working environment in which she was subjected to frequent taunts by employees and threats by managers alike); ¶ (Count II) (same); ¶ 91 (Count IV) ("Defendant's conduct caused the conditions of Plaintiff's work environment to become objectively and subjectively severe, pervasive…").

Counts I, II and IV also relate to alleged conduct by individuals never referenced in the underlying charge, which focused on the conduct of Ken Ruminski and David Rubino; Counts I, II, and IV incorporate a broad set of additional allegations against separate individuals.  Third Amended Complaint, ¶ 39 ("Rudy Guajardo began displaying rude and intimidating behavior towards Plaintiff); ¶ 46 ("Patti Schneider was sitting at [Plaintiff's desk] reading her emails, an invasion of her workspace and privacy"); ¶ 48 ("Mario Reeves opened [a] truck where Plaintiff was and yelled at her to get out in a rude and abrasive manner"); ¶ 49 ("Tony Lee, Plaintiff's janitor supervisor, told her other coworkers that the people downtown told him she was trouble…"); ¶ 50 ("Lou and Tyree, the employees who trained Plaintiff to be a janitor were told to work her extra hard and make her to everything by herself…").

These claims thus fall outside the scope of the original EEOC charge. *Sitar*, 344 F.3d at 726-727 (holding claims not "reasonably related" to underlying charge where the plaintiff's discrimination and

harassment claims "involve a separate set of incidents, conduct, and people…"). Counts I, II, and IV should therefore be dismissed.

## VII. Title VII Claims of Discrimination Occurring Prior to April 28, 2015 are Barred by the Applicable Statute of Limitations.

To support a Title VII claim, a plaintiff must file a charge within 300 days of an unlawful employment practice. 42 U.S.C. §2000e-5(e)(1); *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 707 (7th Cir. 2002). Plaintiff filed her charge on February 22, 2016. Thus, allegations of events occurring prior to April 28, 2015 cannot support her Title VII claim. For example, Plaintiff alleges that between January 1, 2015 and April 15, 2015, her supervisors repeatedly "harassed her" and subjected her to differential terms and conditions of employment by requesting proof of her doctor's appointments. Third Amended Complaint, ¶ 18. Allegations related to time-barred claims should be stricken.

**WHEREFORE**, Defendant, Northeast Illinois Regional Commuter Railroad Corporation d/b/a Metra, prays for the entry of an Order dismissing the Third Amended Complaint, in its entirety and with prejudice, and for any and all other relief that this Honorable Court deems appropriate.

Respectfully submitted,

**Northeast Illinois Regional Commuter
Railroad Corporation, d/b/a Metra,**

By:     */s/ Jamie V. Harrmann*_____
Jamie V. Harrmann, Attorney for Metra

Jamie V. Harrmann
A.R.D.C. #6320754
**Metra Law Department**
547 West Jackson Boulevard, 15th Floor
Chicago, Illinois 60661
312.322.8002
jharrmann@metrarr.com