# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER DUMINIE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-3030 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION d/b/a METRA, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jennifer Duminie brings suit against Defendant Northeast Illinois Regional Commuter Railroad Corporation d/b/a Metra for employment discrimination and retaliation. Before the Court is Defendant's motion to dismiss [49] Plaintiff's operative complaint [47] for failure to state a claim. For the reasons set forth below, Defendant's motion to dismiss [49] is granted in part and denied in part. The case is set for further status on April 15, 2020 at 9:00 a.m. Counsel are directed to file a joint status report, including a proposed discovery plan, no later than April 10, 2020.

**I.  Background**[1]

This being the third motion to dismiss the Court has ruled on in this case, the Court presumes familiarity with its prior orders [31, 43]. Plaintiff Jennifer Duminie ("Plaintiff"), who is Black, began her employment with Defendant Northeast Illinois Regional Commuter Railroad Corporation d/b/a Metra ("Defendant") in April 2009. [*Id.*, ¶ 6.] Things went well at first, as

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Plaintiff was frequently complimented on her performance and received positive evaluations. [*Id.*, ¶¶ 7–8.] In January 2014, however, Plaintiff injured her back in a car accident. [*Id.*, ¶ 13.] To deal with her back problems, Plaintiff took intermittent leave pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"). [*Id.*, ¶¶ 13–15.] She needed to take time off to attend medical appointments and as-needed treatment for flare-ups. [*Id.*, ¶ 13.] Plaintiff reports that she was granted leave between January 22, 2014 and May 22, 2016. [*Id.*, ¶¶ 13–15.]

Between January 2015 and February 2016, Plaintiff's supervisors (Ken Ruminski and David Rubino) repeatedly requested additional information regarding the leave and required Plaintiff to furnish doctors' notes. [*Id.*, ¶ 18.][2] Plaintiff claims that another employee who is white, Michelle Flannigan, was treated better under similar circumstances, in that she was not required to provide documentation. [*Id.*, ¶¶ 19–20.] Plaintiff claims that she was also subject to excessive criticism. [*Id.*, ¶ 21.] In December 2015, Ruminski and Rubino threatened to fire or demote Plaintiff if she continued to take FMLA leave. [*Id.*, ¶ 23.] They also required her to train another employee who had "bumped" her.[3] [*Id.*] They would not allow her to "bump" others based on seniority until she discontinued taking FMLA leave. [*Id.*, ¶ 79.]

On February 12, 2016, Plaintiff was medically disqualified from her then-position of "Ticket by Internet Clerk," although she had been cleared for work by her own physician and Defendant did not independently evaluate her health. [*Id.*, ¶¶ 16, 24.] Plaintiff was fired, allegedly

---

[2] Defendants moved the Court to strike ¶ 18 because it discusses conduct that took place outside of the statute of limitations, which Plaintiff seemingly concedes closed on April 28, 2015. See [53 at 5]. The paragraph in question recounts treatment inside of this limitations period as well, and thus the Court considers the parts of the conduct that happened within the limitations period for its legal analysis, and provides the general timeframe for the sake of narrative coherence.

[3] As the Court explained in its prior opinion, "bumping" appears to be the exercise of seniority rights pursuant to union rules. [43 at 20.]

because of her medical disqualification, and then reinstated a week later. [*Id.*, ¶¶ 26–27.] On February 22, 2016, Plaintiff filed charges with the Illinois Department of Human Rights related to her discharge. [*Id.*, ¶ 31.] In March 2016,[4] the position of Ticket by Internet Clerk was given to a white employee (who was also, incidentally, medically disqualified). [*Id.*, ¶ 28.] Plaintiff was issued a right-to-sue letter in January 2017, and filed the instant case in April of that year. [*Id.*, ¶¶ 32–33.] At some point Plaintiff was *promoted* to Chief Clerk.[5] [*Id.*, ¶ 35.] She was inadequately trained, however, and subsequently "disqualified." [*Id.*] She was then *demoted* to janitor, where she was made to clean toilets and human feces. [*Id.*, ¶¶ 36–37.] By the summer of 2017, she was promoted again into an office job. [*Id.*, ¶ 38.]

Plaintiff recounts various indignities she suffered in her new office job. In October 2017, a coworker named Rudy began acting rudely and intimidatingly toward her, ignored her, and refused to collaborate. [*Id.*, ¶¶ 39–43.] Plaintiff's new supervisor brushed off her concerns about Rudy. [*Id.*, ¶¶ 44–45.] Plaintiff also feuded with a coworker named Patty, who allegedly refused to help or train Plaintiff and once was caught reading Plaintiff's emails. [*Id.*, ¶¶ 46–47.] In June 2017, someone named Mario opened the door to Plaintiff's truck and yelled at her. [*Id.*, ¶ 48.] Also in June, someone named Tony, who had been Plaintiff's supervisor when she was a janitor, told people that Plaintiff was in trouble with the people downtown (presumably Defendant's leadership). [*Id.*, ¶ 49.] And some other former janitorial coworkers, Lou and Tyree, reported that they had been told to make her work extra hard. [*Id.*, ¶ 50.] Plaintiff emailed her supervisor in

---

[4] The timing of all this is murky. Plaintiff suggests that she was fired on February 12, 2016. [47, ¶ 24]; see also [32, ¶ 21]. If Plaintiff was reinstated a week later, presumably she would have gotten her job back by February 19 or 20. [47, ¶ 27.] But Plaintiff does not explain what she was doing between then and March, when her old position was filled by someone else.

[5] The Court infers that this was a promotion, given that chief denotes supervisory status. See, *e.g.*, Black's Law Dictionary (11th ed. 2019) ("Chief: [] 1. Someone who is put above the rest; the leader <chief of staff>. 2. The principal or most important part or position <commander-in-chief>.")

3

September 2017 to complain that the ceiling was leaking water near her desk, but nothing was ever done about it. [*Id.*, ¶ 51.] Plaintiff then quit on January 18, 2018, because of this alleged mistreatment and indifference. [*Id.*, ¶ 52.] Plaintiff filed an EEOC complaint, and was given a right to sue letter, which she did, instituting another case (18-cv-6919). [*Id.*, ¶¶ 54–56.]

Prior to the consolidation of Case No. 18-cv-6919 and the instant case, Defendant moved to dismiss the complaint in this case, which alleged various claims related to Plaintiff's requests for FMLA leave, demotion, and termination in 2016. [37.] The Court granted the motion in part, but allowed two of her claims to proceed. See generally [43.] First, the Court held that Plaintiff adequately pled that she was subject to a discriminatory adverse action when she was demoted to janitor while a disqualified white woman was promoted into her old position. [43 at 8–10.] Second, Plaintiff's FMLA retaliation claim survived, because she was (1) denied promotion opportunities and (2) reassigned to clean toilets after being threatened about FMLA. [*id.* at 20–21.]

Those claims have since been consolidated with Plaintiff's other suit, which stemmed from her alleged harassment and constructive discharge in 2017 and 2018. Plaintiff was given leave [46] to file a single, omnibus complaint, which she did [47]. Defendant has since moved [49] to dismiss the entire consolidated complaint ("Omnibus Complaint") [47] pursuant to Rule 12(b)(6). Defendant points out that many of Plaintiff's factual assertions have changed—most importantly, the Second Amended Complaint [32] did not include any information about Plaintiff's *promotion*, but the Omnibus Complaint does.

## II. Legal Standard

"In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" See, *e.g.*, *Lodholtz v. York Risk Serv. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The

4

plaintiff's complaint needs not include "detailed factual allegations," but it must contain more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Thus, the complaint must include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, the Court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016)).

### III. Analysis

Plaintiff's Omnibus Complaint contains five claims related to the racial discrimination and retaliatory animus she allegedly experienced throughout her employment tenure. Defendant has moved to dismiss the entire Omnibus Complaint pursuant to Rule 12(b)(6). Defendant also argues that the hostile work environment components of Counts I, II, and IV should be dismissed because they exceed the scope of her EEOC charges. The Court already has addressed a similar argument, see [43 at 11-13 (dismissing harassment claims as they pertained to the 2016 allegations)], but need not repeat that analysis here because all of the affected claims fail for several other reasons.

#### A. Count I: Title VII Race Discrimination

In Count I, Plaintiff alleges that Defendant discriminated against her on the basis of her race. The Court can glean three separate discriminatory acts from the complaint: on the basis of her race, Plaintiff was (a) fired (in 2016); (b) reassigned to janitorial work; and (c) subject to a hostile work environment. Defendant argues that, respectively, the firing theory was properly rejected in the Court's February 2019 order; the reassignment/demotion theory is undercut by new

5

allegations in the Omnibus Complaint; and the harassment allegations (imported from the companion suit) fail to state a claim.

To state a claim for discrimination under Title VII using a disparate treatment theory, a plaintiff must adequately allege (1) that she suffered an adverse employment action, and (2) that the action was motivated by discriminatory animus. See *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016); *Porter v. City of Chi.*, 700 F.3d 944, 954 (7th Cir. 2012).

"[A] materially adverse employment action is one which visits upon a plaintiff 'a significant change in employment status.'" *Boss*, 816 F.3d at 917 (citation omitted). Such changes can involve the employee's current wealth, career prospects, or unbearable changes to job conditions that amount to constructive discharge. See *id.*; *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 980 (7th Cir. 2014); *Bell v. E.P.A.*, 232 F.3d 546, 555 (7th Cir. 2000) ("For an employment action to be actionable, it must be a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" (citation omitted)). The Seventh Circuit has defined adverse employment actions "quite broadly" but has explained that the action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Porter*, 700 F.3d at 954 (citation and internal quotation marks omitted). Thus, "not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an employee did not like would form the basis of a discrimination suit." *Id.* (citation and internal quotations omitted); see also *Thompson v. Memorial Hospital. of Carbondale*, 625 F.3d 394, 406 (7th Cir. 2010) ("The idea behind requiring proof of an adverse employment action is simply that a statute which forbids employment discrimination is not intended to reach every

bigoted act or gesture that a worker might encounter in the workplace.") (citation and internal quotations omitted).

Beyond that, the pleading standard for Title VII claims is not demanding: a plaintiff "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her" protected status. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (quotation marks and citations omitted); see also *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (explaining that *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002), does not require Title VII complaints to anticipate methods of proof used at summary judgment).[6] That said, even pro se plaintiffs, let alone those represented by counsel such as Plaintiff, "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank*, N.A., 614 F.3d 400, 404 (7th Cir. 2010). At a minimum, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be addressed by the law." *Id.* at 403.

1. **Termination (2016)**

Neither party has briefed whether Plaintiff may resurrect her claim based on her (brief) 2016 termination. The Court previously explained that Plaintiff's Second Amended Complaint was her "final" chance to replead that claim, [31], and gave Plaintiff leave to file "a single omnibus amended complaint that takes into account the Court's 2/4/2019 ruling on the motion to dismiss."

---

[6] Courts regularly, however, cite summary judgment cases when discussing the sufficiency of a discrimination complaint. See, *e.g.*, *Monroe*, 2018 WL 4074190, at *4 n.1 (justifying its reliance on summary judgment opinions); [43 at 7-8 (looking to summary judgment standards for hints as to what constitutes adverse actions or animus)]; *cf. Carlson*, 758 F.3d at 827-29 (cautioning district court against requiring "evidence" at the motion to dismiss stage, but explaining that allegations of pretext can bolster the plausibility of a Title VII complaint, and relying on summary judgment cases about the timing of retaliation to determine the outer bounds of plausible allegations of retaliatory animus).

7

[46.] The Court's 2/4/2019 ruling, in turn, dismissed this claim because the pleading was ambiguous as to whether Plaintiff had even been fired, and in any event, she had not pled facts from which the Court could infer that she was *discriminatorily* fired. The Omnibus Complaint, however, includes several additional facts that clarify the circumstances and timing of her termination, suggesting that Plaintiff has sought to resurrect the claim.

Regardless of whether these further amendments were proper, they do not fix the Court's central grounds for dismissing this claim: "Plaintiff has not pled any facts that plausibly state even a circumstantial case of discriminatory termination." [43 at 11.] Preliminarily, Plaintiff's allegations that she was "treated in a disparate manner" [47, ¶ 17] are conclusory and must be disregarded. [43 at 10]; see also *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (requiring a Title VII plaintiff to plead a "specified" action); *Kyle v. Morton High School*, 144 F.3d 448, 454 (7th Cir. 1998). In addition, Plaintiff does not even allege that her one-week termination was due to race, so this claim must be dismissed. See, *e.g.*, *Parks v. Speedy Title & Appraisal Review Services*, 318 F. Supp. 3d 1053, 1063–64 (N.D. Ill. 2018) (dismissing discrimination claim when "Plaintiff has not made even a conclusory allegation that would link her membership in a protected class to her [employer's alleged adverse actions]"); see also, generally, *Coleman v. Depke*, 2014 WL 6563814 (N.D. Ill. Nov. 20, 2014) (reviewing the Seventh Circuit's post-*Twombly* caselaw and concluding that a Title VII plaintiff must plead more facts beyond having been terminated for unspecified "conduct" for which non-minority employees were not punished).

2. **Reassignment/Demotion**

In Plaintiff's Second Amended Complaint [32], she told a coherent story about her demotion that led to the plausible inference of discrimination. According to *that* complaint, she was demoted to janitor and replaced with a white woman with a similar medical disqualification.

8

The Court determined that Plaintiff adequately pled that (a) being demoted to janitor was an adverse employment action and (b) the action was plausibly motivated by race. [43 at 9–10.] Nothing in the Omnibus Complaint changes the Court's conclusion as to the first element: Plaintiff has still adequately pled that her demotion to janitor was an adverse action.

But Defendant argues that the timeline is now muddled, and Plaintiff has therefore pled herself out of court. [54 at 3.] Plaintiff pleads that (a) she was medically disqualified on February 12, 2016; (b) she was fired at some point, presumably the same day; (c) she filed a charge with the ILDHR on February 22, 2016; (d) she was reinstated one week after being fired; (e) at some point in March 2016, a similarly medically disqualified white person was given Plaintiff's old job; (f) at some point following reinstatement (contemporaneous with the white woman's promotion?), Plaintiff was promoted to Chief Clerk; and (g) at some point following promotion, Plaintiff was demoted to janitor because she had been inadequately trained and disqualified. The problem for Plaintiff is that this timeline undercuts the inference of racial animus that attached to her demotion. Because the timeline in the Omnibus Complaint fails to tell a story that holds together, the Court can no longer draw the inference that "a similarly-situated employee outside the protected class receiv[ed] systematically better treatment." *Contra* [43 at 10 (citing *Anderson v. Advocate Health & Hosps. Corp.*, 2014 WL 4922371, at *4 (N.D. Ill. Sept. 29, 2014).] This is especially problematic for Plaintiff because the Omnibus Complaint now alleges that she was demoted to janitor after failing at the Chief Clerk position, which she attributes not to racial animus, but to being "inadequately trained and disqualified." [47, ¶ 35–36.] Thus, Plaintiff does not include even a conclusory allegation that she was demoted due to racial animus, and in fact provides a non-racial reason for the demotion. Such a claim cannot proceed. *Parks*, 318 F. Supp. 3d at 1063–64 (dismissing discrimination claim when "Plaintiff has not made even a conclusory allegation that

9

would link her membership in a protected class to her [employer's alleged adverse actions]"); see also *Monroe v. Columbia College of Chicago*, 2018 WL 4074190, at *4 (N.D. Ill. Aug. 27, 2018) (dismissing complaint when, in submitting an amended complaint, the plaintiff "pleads himself out of plausibility by admitting" that some of the allegations in the first complaint were untrue).

### 3. Hostile work environment

Preliminarily, Plaintiff has forfeited this claim in failing to adequately respond to Defendant's motion to dismiss. Her response merely alleges (without pointing to any specific fact or allegation) that taken together, 55 paragraphs of Plaintiff's complaint paint the picture of an openly racist workplace. "[E]ven a complaint that passes muster under the liberal notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) can be subject to dismissal if a plaintiff does not provide argument in support of the legal adequacy of the complaint." *Lee v. Northeast Illinois Regional Commuter Railroad Corporation*, 912 F.3d 1049, 1053–54 (7th Cir. 2019) (affirming dismissal when the plaintiff's response to the motion to dismiss "merely discussed in lay terms the importance of the dispute and failed to grapple with case law discussing what legally constitutes a 'major' or 'minor' dispute"). Plaintiff's cursory response is grounds for dismissal of this claim in and of itself.

In any event, forfeiture aside, Plaintiff fails to state a claim for a hostile work environment. "To state a Title VII hostile work environment claim, a plaintiff must allege (1) she was subject to unwelcome harassment; (2) the harassment was based on her [race]; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability." *Huri v. Office of the Chief Judge of the Circuit Court of Cook County*, 804 F.3d 826, 833–34 (7th Cir. 2015) (citation omitted);

Here, Plaintiff alleges that she was (1) subjected to excessive criticism; (2) held to a higher standard by her managers; (3) subject to rude, invasive, and unprofessional conduct by Rudy, Patty, and Mario[7]; and (4) ignored by her supervisor when she complained about Rudy and the ceiling leak. Preliminarily, the Court has already explained that the first two allegations "do not constitute harassment so severe or [pervasive] to alter the conditions of employment and create an abusive working environment." [43 at 14 (citing *Monroe*, 2018 WL 4074190, at *5).]

Plaintiff cannot proceed because her harassment claim does not meet the second or third prong—she does not allege sufficient facts from which the Court can infer that the harassment was either racially motivated or severe or pervasive. First, "there must be *some* connection [to race], for not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority." *Cole v. Board of Trustees of Northern Illinois University*, 838 F.3d 888, 896 (7th Cir. 2016) (affirming summary judgment for employer, even when the plaintiff, a Black person, found a noose hanging in the office). There is nothing, however, in Plaintiff's complaint suggesting that the alleged harassment Plaintiff received had *anything* to do with her race. Although an "imaginative reader" might be able to speculate as to the racial dimensions of these intra-office spats, that is not enough to survive a motion to dismiss. *Swanson*, 614 F.3d at 403; *Twombly*, 550 U.S. at 555; *cf. Cole*, 838 F.3d at 896 (affirming summary judgment, even when some record evidence suggested racial motivation, and suggesting that dismissal is proper if the complaint does not allege any facts from which a connection between race and harassment can be inferred). Indeed, Plaintiff even fails the minimal pleading requirements imposed upon pro se plaintiffs in employment discrimination cases. See

---

[7] Plaintiff paints her complaints about Tony, Lou, and Tyree as related to the hostile environment in her new office job, but their statements are not themselves harassing, and instead merely suggest that the demotion to janitor was related to some kind of animus.

*Luevano.*, 722 F.3d at 1028-29 (holding that plaintiff stated claim for sexual harassment when she alleged that her coworkers and supervisors were men, permitting the inference that the harassment, though not explicitly sexual, was nonetheless sexist—but caveating that this holding applied to "the lenient pleading standards for pro se plaintiffs").

Finally, even if Plaintiff had plausibly alleged a connection between the harassing conduct and race, it was still not so severe or pervasive to be actionable. "Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment." *Passananti v. Cook Cty.*, 689 F.3d 655, 667 (7th Cir. 2012); see also see also *Alexander*, 739 F.3d at 982 (emphasizing that the work environment must be "*abusive*" to be actionable). Relevant factors include "the severity of the alleged conduct, its frequency, whether it [wa]s physically threatening or humiliating (or merely offensive), and whether it unreasonably interfere[d] with the employee's work performance." *Gates v. Board of Education of the City of Chicago*, 916 F.3d 631, 637 (7th Cir. 2019) (quotation marks and citation omitted). Importantly, the harassment need not be both severe and pervasive—one or the other will suffice. *Hall v. City of Chicago*, 713 F.3d 325, 330 (7th Cir. 2013). Still, it is well established that "petty workplace slights that do not represent significant negative alterations in the workplace" are not actionable. *E.g.*, *Parks*, 318 F. Supp. 3d at 1062–63 (dismissing complaint when Plaintiff only alleged "isolated comments and discipline," "unbalanced workload," lack of "technical support," and job misclassification); see also, *e.g.*, *Adam v. Obama for America*, 210 F.Supp.3d 979, 983–84, 991 (N.D. Ill. 2016) (dismissing complaint where Plaintiff alleged "mean" and "humiliating" conduct from supervisors and coworkers, including being socially shunned, touched without consent, screamed at, and shunted into less favorable opportunities).

Here, Plaintiff has failed to allege facts suggesting that she was plausibly subjected to severe or pervasive harassment. Plaintiff's allegations regarding her co-workers Rudy and Patty are the quintessential workplace slights that cannot support a harassment claim. Compare *Adam*, 210 F. Supp. 3d at 991 (allegations of social shunning and being screamed at do not state claim); *Parks*, 318 F. Supp. 3d at 1062–63 (allegations of discriminatory failure to provide professional development do not state claim), with *Williams v. City of Chicago*, 2017 WL 3169065, at *7 (N.D. Ill. July 26, 2017) (denying motion to dismiss when Plaintiff alleged that coworker made specific sexist comments "on a daily basis"). The allegations about Patty reading her email and Mario yelling at her are, likewise, isolated incidents that do not come close to the kind of severity required to state a claim for workplace harassment. *Adam*, 210 F.Supp.3d at 991. And finally, Plaintiff's grievance about the leak *near* her desk does not save her harassment claim. See *Dotson v. Donohoe*, 2013 WL 171025, at *7–8 (E.D. Mo. Jan. 16, 2013) (granting summary judgment to employer when employee alleged hostile environment related to her relocation to a "storage area for discarded equipment that was unclean and unsuitable for use," because such a relocation was a petty annoyance); *cf. Ferguson v. Merck & Co.*, 2008 WL 205224, at *19–21 (E.D. Penn. Jan. 23, 2008) (not considering cleanliness of work equipment for purposes of hostile work environment claim).[8] Thus, Plaintiff has failed to state a claim for harassment based on race.

B. **Count II: § 1981 Race Discrimination**

Plaintiff's Second Amended Complaint [32] did not include a separate cause of action under § 1981, but did allude to it as a potential basis for federal jurisdiction. She has added a separate, standalone § 1981 claim to the Omnibus Complaint, as an alternative ground for liability

---

[8] To the extent that Plaintiff intended to claim that the leaky ceiling was a separate, standalone adverse action, Plaintiff has not pled facts suggesting that this was "more disruptive than a mere inconvenience," and it is therefore not actionable on its own. *Porter*, 700 F.3d at 954 (quotation marks and citation omitted).

for the employment discrimination discussed above in Count I. This Count must be dismissed for the same reasons as that one. Count II also fails to state a claim for the additional reason that Plaintiff has not adequately alleged facts suggesting that Defendant is liable pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

Defendant is a municipal corporation. See *Hudson v. Northeast Illinois Regional Commuter Railroad Corporation*, 2018 WL 1762439, at *2, (N.D. Ill. Apr. 12, 2018) (applying *Monell*'s municipal liability framework to Metra). The Supreme Court has held that municipalities are only liable under § 1981 if the injury "was caused by a custom or policy within the meaning of *Monell* and subsequent cases." *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 736 (1989). That is, Plaintiff's § 1981 claim can only proceed if she has pled that her injury was caused by one of the following: "(1) the enforcement of an express policy of the [agency], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *E.g.*, *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010) (citations omitted).

Plaintiff's complaint, insofar as it is relevant to *Monell*, states that (1) Plaintiff was "subjected to Defendant's unfair policies and practices and was treated unequally and unlike similarly situated non-black employees;" [47, ¶ 17] (2) "The unfair policies and practices both limited Plaintiff in *her* job classifications, job assignments, wages, and other benefits because of Plaintiff's race;" [*id.*, ¶ 25 (emphasis in original)] and (3) "Defendant committed discriminatory employment practices and race discrimination against Plaintiff" [*id.*, ¶ 71]. These conclusory allegations do not state a claim under *Monell*. First, Plaintiff has failed to identify an *express* policy of discrimination. See *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (explaining that such theory can only be invoked "where a policy explicitly violates a constitutional right when

14

enforced"). Second, Plaintiff has failed to plead facts supporting an inference that Defendant has a "permanent" custom of discriminating against Black people that carries "the force of law." See *Wragg*, 604 F.3d at 467. Finally, Plaintiff has not identified a policymaker, and has thus failed to provide notice of the nature of any policymaker claim. See *Swanson*, 614 F.3d at 405 (requiring the identification of the relevant actors and their roles in the discriminatory conduct).

C. **Count III: FMLA Retaliation**

The Court previously held that the FMLA retaliation claim can go forward. [43 at 19-21.] Defendant moves, again, to dismiss for the same reasons as in Count I—that the timeline muddles an inference of retaliation. But Plaintiff's FMLA claim is not doomed by her subsequent amendments. Plaintiff has pleaded that she took FMLA leave, was told to stop taking leave or she would be fired, and was soon thereafter fired. Plaintiff has included the relevant dates of the conversations and her disqualification. Although Plaintiff was reinstated, her termination was still an adverse action. See *Morse v. Illinois Department of Corrections*, 191 F. Supp. 3d 848, 858 (N.D. Ill. 2015) ("An unpaid suspension clearly constitutes an adverse action.") (citations omitted). The Court still can infer from these facts that Plaintiff suffered an adverse action in retaliation for taking FMLA leave.

Likewise, Plaintiff's FMLA claim related to her not being allowed to "bump" can still proceed. See [47, ¶ 79]; see also [43 at 21 (allowing FMLA claim to proceed based on this allegation)]. Finally, unlike the racial discrimination claims related to the demotion, Plaintiff has specific allegations of FMLA-related animus. See [47, ¶¶ 23-24]. Plaintiff also used the same "disqualification" language to describe both her retaliatory termination and demotion, see [*id.*, ¶ 35], suggesting that the same discriminatory mechanisms were at play. That conclusion is bolstered by Plaintiff's allegations regarding Tony, Lou, and Tyree, who all allegedly told her that

15

she had been singled out for grueling work while on janitor detail. [*Id.*, ¶¶ 49-50.] Though the timing is a bit discontinuous, the allegations of retaliatory animus are enough to make this claim plausible. *Carlson*, 758 F.3d at 828-29 (holding that two-year delay did not render claims of retaliatory animus implausible). In sum, Plaintiff may still proceed with Count III insofar as it pertains to her 2016 termination, failure to be promoted, and demotion to janitor.[9]

### D. Counts IV and V: Constructive Discharge

Defendant moved to dismiss the two constructive discharge counts on the grounds that such claims must allege even more egregious conduct than harassment, and the harassment Plaintiff complained of was not even actionable; *a fortiori* this claim fails as well. Plaintiff's response, in its entirety, is this: "**Counts IV and V should not be dismissed because Plaintiff plead [sic] a prima facie case for constructive discharge and alleged facts describing an 'abusive' working environment.** Plaintiff makes a prima facie case for constructive discharge in ¶¶ 34–56, and 89–104 in her Third Amended Complaint and it should not be dismissed." [53 at 5 (bold in original).] Plaintiff's cursory response is grounds for dismissal in and of itself. *Lee*, 912 F.3d at 1053–54. Her response does not grapple with the cases cited by Defendant or cite any case law of its own. Indeed, it barely even contains cursory conclusions.

Regardless, Plaintiff has failed to allege facts giving rise to a plausible inference that she was constructively discharged. Constructive discharge is, in effect, hostile-work-environment-plus, in that the "plaintiff must make a further showing: She must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response."

---

[9] Plaintiff does not appear to be arguing that she experienced a hostile work environment in 2017-18 as a result of her FMLA leave. See [47, ¶¶ 77-81.] In any event, the Court has previously concluded that Plaintiff has failed to allege facts suggesting that her work environment was hostile at that time. See *supra* Section III(A)(3). Likewise, Plaintiff has not alleged any facts suggesting a causal connection between her *new coworkers*' actions and her having taken FMLA leave years prior.

*Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004). Thus, the failure to adequately allege a hostile work environment will, *a fortiori*, doom any constructive discharge claim. *Herr v. City of Chicago*, 479 F.Supp.2d 834, 841 (N.D. Ill. 2007) ("[Plaintiff's] constructive discharge claim fails on its face because he has not presented evidence of a hostile work environment.") As explained above, Plaintiffs allegations are not even actionable as harassment, which means that she cannot proceed with constructive discharge under either a racial discrimination or FMLA retaliation theory. *Id.* Admittedly, the allegations regarding the dripping ceiling fit better into the constructive discharge framework (as opposed to harassment), but even then, there is nothing in the complaint that leads to the plausible inference that having a ceiling leak near one's desk is so intolerable that resignation is a fitting response. *E.g., id.* (collecting cases); *Jones v. DuPage County Sherriff*, 2016 WL 3752966, *6 (N.D. Ill. July 14, 2016) (dismissing a constructive discharge claim when plaintiff failed to plead the kinds of "egregious" conduct that renders workplaces intolerable, such as death threats); *cf. Dotson*, 2013 WL 171025, at *7–8 (relocation to a "storage area for discarded equipment that was unclean and unsuitable for use" was a petty annoyance and therefore not actionable as a hostile work environment, let alone constructive discharge).

## IV. Conclusion

For the reasons set forth above, Defendant's motion to dismiss [49] is granted in part and denied in part. The case is set for further status on April 15, 2020 at 9:00 a.m. Counsel are directed to file a joint status report, including a proposed discovery plan, no later than April 10, 2020.

Dated: March 18, 2020

Robert M. Dow, Jr.
United States District Judge